UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NASHWA DEABES,            :<br>      Plaintiff,      :<br>                          :<br>v.                        :<br>                          :   No. 3:08 CV 372 (WWE)<br>GENERAL NUTRITION         :<br>CORPORATION,              :<br>      Defendant.      : | |

### MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

In this action, plaintiff Nashwa Deabes asserts that defendant General Nutrition Corporation ("GNC") discriminated against her in violation of Title VII and the Connecticut Fair Employment Practices Act.[1]

Defendant has filed a motion for summary judgment on the complaint in its entirety. For the following reasons, the motion for summary judgment will be granted.

### BACKGROUND

In support of the motion for summary judgment, defendants have submitted statements of undisputed facts, exhibits and affidavits. These materials reflect the following factual background.

Plaintiff Deabes is an Egyptian woman. In October 2002, GNC hired plaintiff as a part-time associate at its store in Simsbury, Connecticut.

In June 2003, GNC promoted plaintiff to manager trainee. In November 27, 2005, GNC transferred plaintiff to store manager for the store at the West Farms Mall in Farmington, Connecticut.

---

[1] The Court will review the CFEPA claims according to the Title VII framework. Levy v. Comm'n of Human Rights and Opportunities, 236 Conn. 96, 103 (1996); Brittell v. Dep't of Cor., 247 Conn. 148 (1998).

1

As store manager, plaintiff's duties included enhancing product sales, hiring, training, discipline, maintaining store inventory and quality control. She was also accountable for implementing work schedules to provide optimal coverage.

GNC's Retail Vacation Policy sets forth that vacation time runs on an annual cycle from April 1 to March 31. Unused vacation time is forfeited at the end of each cycle. The Retail Vacation Policy states:

> Vacation days are a benefit for active employees and are granted at the discretion of the company. While the Company will make every effort to approve requested time-off, the final approval to allocate scheduled vacation is exclusively reserved by the Company. In order to insure ongoing business operations, the Company reserves the right to modify previously scheduled vacation days.

Plaintiff's supervisor, Mark Yetter, who is a Regional Sales Director, stated that GNC requires store managers to ensure that their stores are properly scheduled and covered while they are on vacation.

In March 2006, plaintiff still had remaining vacation time. In early March, plaintiff called Yetter and inquired whether she could roll her unused vacation time over to the following year. He denied her request in accordance with GNC policy. Plaintiff represents that she also requested to take vacation days on March 22 and 23 and that Yetter approved her request.

On March 22 and 23, plaintiff took vacation days. On March 23, 2006, plaintiff received a call from Eric Boguslawski, who worked the day shift at the West Farms store. He informed her that the employee scheduled to close out would not be coming in for her shift. Plaintiff instructed Boguslawski to call other stores for assistance.

Boguslawski contacted plaintiff again to inform her that he could not find anyone

to close the store.  Plaintiff then instructed him to call GNC's district office.

Later on March 23, Yetter received a call from Mary-Lynn Grand at the division office.  She informed him that she had spoken with Boguslawski about the need for someone to cover the closing shift at the West Farms store.  Boguslawski also spoke to Yetter and informed him that plaintiff was on vacation.  Yetter then arranged for Heidi Marinone, the Senior Store Manager for plaintiff's region and arranged for coverage of the closing shift.

Yetter asserts that he had been unaware that plaintiff was on vacation until his conversation with Boguslawski.  He later spoke to his supervisor, Divisional Sales Director Ed Flisak, about how to discipline plaintiff.  He also consulted with GNC's Director of Employee Relations Ken Wunschel on taking the appropriate action.  Yetter decided to terminate plaintiff for taking unauthorized vacation and for failure to staff her store properly.  On March 24, Yetter terminated plaintiff.  In his deposition, Yetter stated that he has terminated each manager who failed to provide sufficient coverage.

Plaintiff was replaced as store manager by Marinone.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against

the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

    The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc., 664 F.2d at 351.  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson, 477 U.S. at 255.

    If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

    This is a disparate treatment case based on circumstantial evidence relative to plaintiff's termination.  Accordingly, the Court analyzes plaintiff's claims of disparate treatment and retaliation according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).

    Disparate Treatment

    To establish her prima facie claim of discrimination based on her gender and national origin, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment

4

action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Although the plaintiff's initial burden is not onerous, she must show that the alleged adverse employment action was not made for legitimate reasons.  Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action.  The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

For purposes of ruling on this motion, the Court assumes that plaintiff has met her burden on the prima facie case for her claim of national origin and gender discrimination.

Defendant submits that plaintiff's termination resulted from her failure to obtain authorization for leave and to secure adequate coverage of the store during her vacation.  In her deposition, plaintiff asserts that she was given authorization for taking her two-day vacation.  She has also proffered evidence outlining the efforts she made to ensure coverage.  Plaintiff maintains that defendant has unreasonably advanced that its vacation policy requires GNC Store Managers to terminate their vacations early if a Sales Associate fails to cover a scheduled shift.

The Court will grant summary judgment on plaintiff's claim of gender discrimination.  It is undisputed that defendant replaced plaintiff with another woman after plaintiff's termination, which weighs heavily against any inference that her

5

termination occurred because of gender discrimination.  See Montanile v. National Broadcast Co., 211 F. Supp. 2d 481, 486 (S.D.N.Y. 2002) (replacement by another in the same protected class weighs heavily against the inference that she suffered discrimination).  Plaintiff has proffered no evidence raising an inference that gender discrimination motivated her termination.

The Court also finds that plaintiff has failed to raise an inference that the challenged decision was more than likely motivated by national origin discrimination.  Plaintiff argues that defendant has submitted shifting explanations for her termination that are both erroneous.  However, an employer may take an adverse employment action for a bad reason or a reason based on erroneous facts so long as the action is not for a discriminatory reason.  Dorman v. Webster Central Sch. Dist., 576 F. Supp. 2d 426, 433 (W.D.N.Y. 2008).  A plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination.  Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997).  Plaintiff's evidence lacks any indication of discriminatory bias based on her national origin.

Plaintiff attacks defendant's assertion that Yetter terminated every employee reporting to him for failing to provide coverage for their stores.  Plaintiff contends that certain white male managers were disciplined less severely for the same conduct.  Plaintiff may raise an inference of discrimination by showing that her employer treated her less favorably than similarly situated employees outside her protected class for a similar offense.  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  However, in this context, plaintiff must demonstrate that these comparators are similarly situated

in all material respects and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).  Plaintiff fails to identify the individuals who were treated differently by name with the exception of John Galasso, who was on authorized vacation when he required help for coverage but who reported to a different Regional Sales Director than Yetter.  Whether employees report to the same supervisor is an important factor to the "similarly situated" determination.  See Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) (citing cases).  Accordingly, this evidence fails to raise an inference of discrimination.

Finally, plaintiff sets forth that a glass ceiling at GNC prohibited the advancement of minorities.  Plaintiff relies upon Flisak's deposition testimony that he could not identify minorities above him at GNC.  However, evidence concerning the racial or national origin of Flisak's superiors is irrelevant to whether plaintiff's termination was motivated by a discriminatory animus.  Even assuming that such evidence is relevant, it does not work to preclude summary judgment in this instance.  Absent other sufficient evidence, generalized statistics do not alone support an inference of disparate treatment.  Lee v. Poughkeepsie City Sch. Dist., 2008 WL 852790, *9 n.7 (S.D.N.Y. 2008) (citing cases).  Accordingly, the Court will grant defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #51] is GRANTED.   The Clerk is instructed to close this case.

Dated this   31st    day of March, 2010 at Bridgeport, Connecticut.

```
              /s/
       _____
       WARREN W. EGINTON
       SENIOR UNITED STATES DISTRICT JUDGE
```